E-FILED
Monday, 23 April, 2018 11:35:44 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| HELENA DAVIS, as Mother and Next Friend of T.L., a Minor,<br>    Plaintiff,<br><br>v.<br><br>PEORIA SCHOOL DISTRICT 150, *et al.*,<br>    Defendants. | Case No. 1:17-cv-01206-JES-JEH |

## ORDER

Now before the Court is a Motion to Dismiss, filed by the following Defendants: the Board of Education of Peoria Public School District No. 150 ("the District"), Darryies Johnson, Dr. Sharon Desmoulin-Kherat, Geralyn Hammer, and Unknown Supervisors and Officers of Peoria Public School District No. 150. (D. 29).[1] The Plaintiff, Helena Davis, as mother and next friend of T.L., a minor, filed a Response (D. 32) and Memoranda of Law in Support (D. 30); (D. 31). For the reasons set forth below, the Defendants' Motion is GRANTED in part and DENIED in part.

### BACKGROUND

The Plaintiff filed her initial Complaint in May 2017 against the Defendants noted above, along with Donald Williams and Renee Andrews. (D. 1). Andrews has since been dismissed from the case. (See the Court's January 19, 2018 text order). The Plaintiff later filed a Second Amended Complaint against the remaining Defendants. (D. 28). She seeks damages pursuant to 42 U.S.C. § 1983 ("§ 1983") for alleged violations of her constitutional rights and Illinois state law.

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

1

The Plaintiff's son, T.L., attended a Day Treatment Program for students with emotional disabilities and other behavioral problems at the District's Trewyn School. The Plaintiff alleges the District had a policy and/or custom of encouraging the use of something known as "the box." (D. 28 at pg. 3). She further asserts that the District's policy "encourage[es] the use of excessive force in placing children in 'the box'." *Id*. The box the Plaintiff refers to is what the Defendants describe as "a safe room used for de-escalation of disruptive and violent behavior of students." (D. 29 at pg. 3).

Video footage attached to the Plaintiff's initial Complaint (D. 1), shows that on March 1, 2016, Williams—a teacher's assistant at Trewyn, shoved T.L. into the doorframe while T.L. was walking through the doorway of the box. Shortly thereafter, Williams struck T.L. on the left side of his face with his right hand. The Plaintiff acknowledges that the box is "a locked room used for punishment of unruly children," and claims she incorporates the submitted video footage of the incident from her initial Complaint into her Second Amended Complaint. (D. 28 at 3). She further alleges Johnson (the Assistant principal of Trewyn) and Hammer (the Director of Human Resources for the District), were informed of the incident, but Johnson's reaction was "advisory" and "non-disciplinary" which amounts to sanctioning Williams' behavior *Id*. at pg. 4.

The Plaintiff argues that it was never legally necessary for Williams "to strike, or use physical force" on T.L. *Id*. She also alleges the use of force initiated by Williams was "excessive, unreasonable, unnecessary and willful, and recklessly disregarded" her rights. *Id*. In total, the Plaintiff claims: (1) the District's initial refusal to produce the video to her deprived her of her parental right to fully comfort her child; (2) the District ignored any potential injury T.L. may have had and declined to give him medical treatment or allow him to contact his mother

after the incident; (3) Williams and Johnson willfully injured T.L.; and (4) on April 20, 2016, Williams made derogatory remarks toward T.L. about his deceased father. *Id*. at pp. 4-5.

As a result of the foregoing events, the Plaintiff alleges she is entitled to damages from the Defendants, pursuant to § 1983, for the following: (1) excessive use of force by Williams, which is also attributed to Kherat—as superintendent of the District—Hammer, and Johnson; (2) Fourth and Fourteenth Amendment violations by Johnson, Williams, Kherat, and Hammer; (3) battery by Williams; (4) willful and wanton conduct by Williams, Kherat, Hammer, Johnson, and the District; (5) intentional infliction of emotional distress by Williams; and (6) negligent training and supervision by the District. *Id*. at pp. 5-16. The Plaintiff further alleges the District is liable for all of Williams' and Johnson's alleged actions by way of the doctrine of *respondeat superior* and 745 ILCS 10/9-102. *Id*. at pp. 13-14.

The remaining Defendants, minus Williams—who is proceeding *pro se*—now move to dismiss all of the Counts in the Plaintiff's Second Amended Complaint directed at them, pursuant to Federal Rule of Civil Procedure 12(b)(6). (D. 29). The Defendants argue: (1) Counts II and III fail to plead a § 1983 claim against Kherat or Hammer in their individual or official capacities (*Id*. at pp. 6-10); (2) Count IV fails to state a claim against Johnson (D. 29 at pp. 10-12); (3) Counts VIII, IX, X, and XI fail to state a cause of action for willful and wanton conduct under Illinois law (*Id*. at pp. 12-13); (4) Counts XII and XIV fail to state a cause of action against the District under *respondeat superior* (*Id*. at pp. 13-15); (5) Counts XIII and XIV must be dismissed because agency principles are not applicable to § 1983 claims (*Id*. at pp. 15-16); (6) Count XV fails to state a cause of action for negligent supervision and is barred by the Illinois' Tort Immunity Act (*Id*. at pp. 16-19); and (7) the Plaintiff's request for punitive damages should be stricken (*Id*. at pp. 19-20).

## LEGAL STANDARD

In reviewing the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts the Plaintiff's factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Allegations stated in the form of legal conclusions, however, are insufficient to survive a motion to dismiss. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). A complaint must contain a short and plain statement of the plaintiff's claim, sufficient to show entitlement to relief and to notify the defendants of the allegations against them. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). This standard is met if the plaintiff describes in sufficient factual detail enough to suggest a right to relief beyond a speculative level. *Id.; Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Srvs.*, 496 F.3d 773, 776 (7th Cir. 2007). In short, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

## ANALYSIS

First, the Defendants allege that Counts II and III of the Plaintiff's Second Amended Complaint fail to plead a § 1983 claim against Kherat or Hammer in their individual or official capacities. (D. 29 at pp. 6-10). They claim the Plaintiff "fails to explicitly state in which capacity the claims are actually brought." *Id*. at pg. 7. The Plaintiff asserts that she has clearly brought these counts against Kherat and Hammer in both capacities. (D. 31 at pp. 2-3).

In order to bring an individual capacity claim under § 1983 for Williams' alleged constitutional violations, the Plaintiff must prove Kherat or Hammer knew about the conduct, facilitated it, approved it, condoned it, or turned a blind eye toward it. *Jones v. City of Chicago*,

856 F.2d 985, 992 (7th Cir. 1988). More bluntly, "[t]o be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct." *Id*.

The Plaintiff asserts that Kherat and Hammer directed policy, had a duty to verify and confirm compliance with District policy, failed to confirm that Williams was properly trained, and failed to properly train and supervise him. (D. 28 at pp. 5-7). She further claims that these allegations amount to and were the direct and proximate cause of Williams' constitutional violations. *Id*. at 5-7. The Plaintiff fails to allege any underlying facts, however, demonstrating Kherat's or Hammer's personal involvement in Williams' alleged actions or its aftermath. Specifically, she fails to sufficiently allege that either one of them facilitated, approved, condoned, or ignored the incident. The Plaintiff's assertions that they failed to monitor or properly train Williams, and that Hammer was informed of the incident afterwards, are insufficient. Thus, the Plaintiff's allegations in Counts II and III are inadequate to support an individual capacity claim against Kherat and Hammer.

An official capacity claim under § 1983 must be based on an allegation of either (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is well settled and permanent; or (3) a constitutional injury caused by a person with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

As noted already, the Plaintiff fails to allege that Kherat or Hammer directly caused the Plaintiff's alleged constitutional injuries. The Plaintiff further fails to specify in Counts II and III what policy caused the constitutional deprivation at issue or that there was a widespread practice of such behavior that was well settled and permanent. The Plaintiff does allege generally, however, earlier in her Complaint, that the District has "a policy and/or custom encouraging the

5

use of 'the box' and further encouraging the use of excessive force in placing children in 'the box'." (D. 28 at pg. 3). This sufficiently alleges, although just barely so, an official capacity claim against Kherat and Hammer.

Accepting all of the alleged facts as true, it is possible that Kherat or Hammer were responsible for the promulgation of an official or unofficial express policy that led to a violation of the Plaintiff's constitutional rights. As a result, the Plaintiff's allegations in Counts II and III are sufficient to support official capacity claims against Kherat and Hammer. The Defendants' Motion to Dismiss Counts II and III is therefore GRANTED in part and DENIED in part.

The Defendants also allege Count IV should be dismissed because the Plaintiff fails to state a claim against Johnson in his individual or official capacities. (D. 29 at pp. 10-12). They highlight the inconsistency between the case caption of the Plaintiff's Second Amended Complaint, which states that she is bringing suit against Johnson individually (D. 28 at pg. 1), and her later assertion in paragraph 22 that Johnson was acting in his official capacity (*Id*. at pg. 4). (D. 29 at pg. 11). The Plaintiff concedes that she is only suing Johnson in his individual capacity. (D. 31 at pg. 3). She claims that Johnson's personal involvement directly implicates him in the alleged denials of her constitutional rights. *Id*.

Again, "[t]o be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct." *Jones*, 856 F.2d at 992. The Plaintiff must prove that Johnson knew about Williams' conduct, facilitated it, approved it, condoned it, or turned a blind eye toward it. *Id*. The Plaintiff alleges, *inter alia*, that Johnson reviewed video footage of the incident and determined that Williams did not violate District policy. (D. 28 at pg. 4). She further alleges that Johnson was a witness to the incident, did not discipline Williams for his actions, and was directly involved in denying T.L. medical care immediately afterwards. *Id*.

6

Accepting these allegations as true, it is possible that Johnson, in his individual capacity, was responsible for a violation of the Plaintiff's constitutional rights. As a result, the Plaintiff's allegations in Count IV are sufficient to support her claim. The Defendants' Motion to Dismiss Count IV is therefore DENIED.

Next, the Defendants argue that Counts VIII, IX, X, and XI of the Plaintiff's Second Amended Complaint fail to state a cause of action for willful and wanton conduct under Illinois law. (D. 29 at pp. 12-13). These counts are state law tort claims of willful and wanton conduct against Johnson, Kherat, Hammer, and the District, respectively, for Williams' actions by way of the doctrine of *respondeat superior*.

Relying on an Illinois Supreme Court case, *Ziarko v. Soo Line R. Co.*, 641 N.E. 2d 402, 406 (Ill. 1994), the Defendants argue these claims must be dismissed because Illinois law does not recognize an independent tort based solely on willful and wanton conduct. *Id*. The Defendants further highlight that a district court in Illinois has affirmed the Illinois Supreme Court's finding, citing *Rhyan v. City of Waukegan*, 819 F. Supp. 2d 755, 758-59 (N.D. Ill. 2011) and *Remblake v. County of Will*, 2010 WL 3232146, *2 (N.D. Ill. 2010). Indeed, these cases cite *Ziarko* for the proposition that there is no separate and independent tort of willful and wanton conduct under Illinois law. *Id.*; see also *Krywin v. Chicago Transit Authority*, 938 N.E. 2d 440, 452 (Ill. 2010).

The Plaintiff denies that *Ziarko* stands for this proposition. (D. 31 at pp. 3-4). She cites *Murray v. Chicago Youth Center*, 864 N.E. 2d 176 (Ill. 2007) in support of her counter-arguments, claiming that *Ziarko* establishes "that willful and wanton conduct could be proven without a showing of intentional conduct[]" and "incontrovertibly demonstrates that the willful and wanton conduct claims presented by Plaintiff are allowed under Illinois law[.]" *Id*.

7

A review of *Murray*, and its brief discussion of *Ziarko* (864 N.E. 25 at 191), takes nothing away from the Illinois Supreme Court's explicit finding in *Ziarko* that "[t]here is no *separate and independent* tort of 'willful and wanton' misconduct." *Ziarko*, 641 N.E. 2d at 274 (emphasis added). The Plaintiff fails to cite any authority for the proposition that that there is a stand-alone tort of willful and wanton conduct under Illinois law.

Willful and wanton conduct is considered an aggravated form of negligence. *Krywin*, 938 N.E. 2d at 452. In order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim and further successfully plead that there was either a deliberate intention to harm the plaintiff, or a conscious disregard for the plaintiff's welfare. *Jane Doe-3 v. McLean County Unit Dist. No. 5 Bd. Of Directors*, 973 N.E. 2d 880, 887 (Ill. 2012). The Plaintiff's willful and wanton conduct allegations in this case are inextricably intertwined with her negligence claim in Count XV. The Defendants do not argue that the Plaintiff failed to properly plead the basic elements of negligence. See (D. 29 at pp. 16-17). Therefore, the Court confines its analysis to whether the Plaintiff has properly plead that the relevant Defendants either had a deliberate intention to harm T.L. or a conscious disregard for his welfare.

The Court already addressed the Plaintiff's pleadings regarding Johnson in its analysis of Count IV. The Plaintiff has sufficiently plead an individual capacity claim against Johnson. In doing so, she includes sufficient allegations that Johnson was deliberately indifferent and consciously disregarded T.L.'s welfare. Accepted as true, her claims that Johnson witnessed the incident, failed to discipline Williams, and was directly responsible for denying T.L. medical care afterwards (D. 28 at pg. 4) support such findings. Therefore, the Defendants' Motion to Dismiss Count VIII is DENIED.

Additionally, as discussed previously in the Court's analysis of Counts II and III, the Plaintiff fails to allege that Kherat or Hammer were personally involved in Williams' conduct. The Plaintiff further fails to allege that Kherat or Hammer were deliberately indifferent toward T.L. or consciously disregarded his welfare. Again, her assertions that they failed to monitor or properly train Williams, and that Hammer was informed of the incident between T.L. and Williams, after the fact, are insufficient. The Plaintiff therefore has not sufficiently plead willful and wanton conduct on the part of Kherat or Hammer. Accordingly, the Defendant's Motion to Dismiss Counts IX and X of the Plaintiff's Second Amended Complaint is GRANTED.

Given the Court's finding on Count VIII against Johnson, Count XI—the willful and wanton conduct count against the District—also survives the Defendants' Motion to Dismiss. The Plaintiff has properly plead that the District breached its official duties and obligations to T.L. by way of Williams and Johnson. She alleges that Williams battered T.L. on March 1, 2016 and that Williams was not removed from his position until sometime after April 20, 2016, when he allegedly made a comment about T.L.'s deceased father. It is clearly alleged that Johnson, as Williams' supervisor, at least should have known by then that Williams battered T.L. on March 1, 2016. Accepted as true, these facts demonstrate a course of action by the District's employees that was, arguably, willful and wanton conduct. As a result, the Defendant's Motion to Dismiss Count XI of the Plaintiff's Second Amended Complaint is DENIED.

The Defendants further allege that Counts XII and XIV of the Plaintiff's Second Amended Complaint fail to state a cause of action against the District under *respondeat superior*. (D. 29 at pp. 13-15). Specifically, they argue Williams' actions against T.L. were clearly outside the scope of his employment under Illinois law. *Id*. at pp. 13-15. The Plaintiff responds that her mere allegation that Williams' actions were within the scope of his employment is sufficient.

9

(D. 31 at pg. 4). In her view, because she alleges that Williams violated T.L.'s constitutional rights in connection with his disciplinary action of placing him in the box, his actions were within the scope of his employment. *Id*. The Plaintiff further highlights that she alleges in her Second Amended Complaint that Williams' actions, including insulting T.L.'s deceased father, were in the course of his employment and the scope of his duties as a teaching assistant. *Id*.

As the Defendants note in their Motion, under Illinois law, "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (b) it is actuated, at least in part, by a purpose to serve the master." *Bagent v. Blessing Care Corporation*, 862 N.E. 2d 985, 992 (Ill. 2007) (quoting Restatement (Second) of Agency § 228 (1958)). The Plaintiff has sufficiently alleged that Williams' actions were within the scope of his employment. The Defendants' arguments to the contrary (D. 29 at pp. 13-15) address the merits of the Plaintiff's allegations (*i.e.* whether Williams' conduct was actually within the scope of his employment). The Court will not address the merits of that issue at this stage in the litigation.

As discussed previously, the Plaintiff alleges that the District had a policy "encouraging the use of excessive force in placing children in 'the box'." (D. 28 at pg. 3). The Defendants' contention that "it is hard to fathom how Williams' actions… …could be considered within the scope of [his] employment" (D. 29 at pg. 15) may ultimately be true. Whether his conduct was within the scope of his employment is, for now, however, a disputed issue of material fact. As a result, the Defendants' Motion to Dismiss Counts XII and XIV of the Plaintiff's Second Amended Complaint is DENIED.

The Defendants further argue that Counts XIII and XIV should be dismissed because agency principles are not applicable to § 1983 claims. (D. 29 at pp. 15-16). The Plaintiff alleges

in Count XIII that the District should be held liable for Johnson's actions, as his employer, while in Count XIV she seeks to hold the District liable for the actions of Williams, Johnson, Kherat, and Hammer. (D. 28 at pg. 14). Citing *Potts v. Moreci*, 12 F. Supp. 3d 1065, 1072 (N.D. Ill. 2013), in support, the Defendants assert that the "agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims." (D. 29 at pg. 16). The Plaintiff responds that "[a]ll facts necessary" to support these claims have been alleged. (D. 31 at pg. 5). She emphasizes that all of the relevant individual Defendants are properly alleged to have been acting within the scope of their employment. *Id*. at pp. 5-6. The Plaintiff fails to clarify whether Counts XIII and XIV are brought under § 1983.

As the district court noted in *Potts*, agency principles of *respondeat superior* and vicarious liability do not apply to § 1983 claims. 12 F. Supp. 3d at 1072 (citing *Kinslow v. Pullara*, 538 F. 3d 687, 692 (7th Cir. 2008) and *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)); see also *Hosty v. Carter*, 412 F. 3d 731, 733 (7th Cir. 2005) ("§ 1983 does not create vicarious liability"). Accordingly, Counts XIII and XIV fail on the merits, in so far as they are brought under § 1983. The Defendants' Motion to Dismiss Counts XIII and XIV of the Plaintiff's Second Amended Complaint is GRANTED. The Plaintiff, however, is granted leave to amend these counts, solely to clarify the issue discussed here.

The Defendants also assert that Count XV fails to state a cause of action for negligent supervision and is barred by the Illinois' Tort Immunity Act. (D. 29 at pp. 16-19). Section 3-108 of the Illinois Tort Immunity Act, 745 ILCS 10/3-108(b), provides that:

> neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless… the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury.

11

745 ILCS 10/3-108. The Defendants reason that the Plaintiff is required to demonstrate a "course of action"—consistent with the Tort Immunity Act's definition of willful and wanton (745 ILCS 10/1-210)—and has failed to do so. (D. 29 at pg. 19). The Plaintiff asserts in response that the allegations in her Second Amended Complaint are sufficient to support a claim of negligent supervision. (D. 31 at pg. 6). As she sees it, the language of 745 ILCS 10/3-108 fails to demonstrate that the District is entitled to immunity. *Id*.

As discussed previously, in the Plaintiff's Second Amended Complaint, she alleges that Williams battered T.L. but was not removed from his position until sometime after he allegedly made a comment about T.L.'s deceased father, approximately two months later. She also alleges that Johnson, Williams' supervisor, at least should have known that Williams battered T.L. Accepted as true, these facts demonstrate a course of action by the District's employees that was, arguably, consistent with the Tort Immunity Act's definition of willful and wanton conduct. They also sufficiently allege negligent supervision by the District. Accordingly, the Defendants' Motion to Dismiss Count XV of the Plaintiff's Second Amended Complaint is DENIED.

Lastly, the Defendants argue the Plaintiff's request for punitive damages must be stricken. (D. 29 at pg. 19-20). They assert that "it is well-settled that municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)." *Id*. at pg. 20. They reason that since punitive damages are only recoverable in individual capacity suits, and the Plaintiff has failed to plead a cause of action against anyone from the District in their individual capacity, the Plaintiff's request should be stricken. *Id*. The Plaintiff did not respond to this argument. (D. 31). For the reasons discussed previously in this Order, the Defendants' argument is now a *non sequitur*.

The Plaintiff's individual capacity claim against Johnson survives the present Motion. Moreover, the counts against Williams are missing from the Court's analysis here since he has not moved to dismiss the Plaintiff's claims against him. The Plaintiff may also have a valid individual capacity claim against Williams, which may ultimately implicate the District. As such, the Court DENIES without prejudice the Defendants' request to strike the Plaintiff's punitive damages claim at this time.

In summary, the Court finds that the Defendant's Motion to Dismiss Count II against Kherat in her individual capacity, Count III against Hammer in his individual capacity, Count IX against Kherat, Count X against Hammer, and Counts XIII and XIV against the District are GRANTED. The Plaintiff is granted leave to amend Counts XIII and XIV, if she so desires, but must do so by May 8, 2018. The Defendants' Motion to Dismiss Count II against Kherat in her official capacity, Count III against Hammer in his official capacity, Counts IV and VIII against Johnson, and Counts XI, XII, and XV against the District are DENIED. Additionally, the Defendants' request to strike the Plaintiff's request for punitive damages is DENIED without prejudice. The remaining counts from the Plaintiff's Second Amended Complaint are: Count I against Williams, Count II against Kherat in her official capacity, Count III against Hammer in his official capacity, Count IV against Johnson in his individual capacity, Counts V, VI, and VII against Williams, Count VIII against Johnson, and Counts XI, XII, and XV against the District.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (D. 29) is GRANTED in part and DENIED in part.

*It is so ordered.*

Entered on April 23, 2018

    _s/ James E. Shadid___
James E. Shadid
Chief United States District Judge